UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24069-Civ-COOKE/TORRES

SENSIFY (US) INC., a Connecticut
corporation,

    Plaintiff,

vs.

INTELLIGENT TELEMATICS NORTH
AMERICA, INC., a Delaware
corporation,

    Defendant.
_____/

## ORDER ON AMENDED MOTION TO DISMISS

This is a trade-secret misappropriation action involving a written agreement between Defendant Intelligent Telematics North America, Inc. ("ITNA"), its parent company, and its sister company on one side, and Plaintiff Sensify (US) Inc.'s ("Sensify") parent company on the other side (together, the "Signatories"). I have jurisdiction under 28 U.S.C. § 1332.

Pending is ITNA's Amended Motion to Dismiss (ECF No. 11). I have reviewed the Motion, the parties' supporting and opposing briefs, the record, and the relevant legal authorities. For the reasons that follow, I grant the Motion.

### BACKGROUND

On February 22, 2016, the Signatories entered into an Intelligent Telematics Reseller Agreement ("Agreement"). (ECF No. 11-1). The Agreement contains two provisions pertinent to ITNA's Motion. First, Section 10.g, the "Choice of Law and Forum" clause, provides:

> This Agreement will be governed by and construed under the laws of England and Wales, without reference to conflict of laws principles. The parties each consent to exclusive jurisdiction and venue in the [United Kingdom] with respect to any dispute *arising out of or relating to* this Agreement. The Parties waive all defenses of lack of personal jurisdiction and *forum non conveniens*. Process may be served on either party in the manner authorized by applicable law or court rule.

(ECF No. 11-1 ¶ 10.g) (emphasis added). Second, Section 10.h, the "Survivability" clause,

provides, "Sections 1, 4.g, 5, 6, 7, 8 and 9 will survive the expiration or termination of this Agreement." (*Id.* ¶ 10.h).

On September 3, 2016, ITNA terminated the Agreement. (ECF No. 14-1 ¶ 5 & Ex. A). Roughly three weeks later, Sensify filed its Complaint in the United States District Court for the Southern District of Florida. (ECF No. 1). In it, Sensify alleges that "[o]n February 22, 2016, in furtherance of their business dealings, Sensify was required to disclose to ITNA a list of proprietary and protected Sensify customers and accounts." (*Id.* ¶ 15). Although the Sensify does not specifically mention the Agreement, it asserts that "disclosure of the customer identities at issue was covered by strict confidentiality provisions." (*Id.* at 16). Sensify claims that ITNA breached those confidentiality provisions by "intentionally, willfully, and improperly us[ing] Sensify's confidential trade secret information to procure . . . business for ITNA," thus violating Florida's Uniform Trade Secrets Act, Fla. Stat. ch. 688 ("FUTSA"). (*Id.* ¶ 20).

## DISCUSSION

ITNA argues, *inter alia*, I should dismiss Sensify's Complaint because the Agreement's forum-selection clause requires the parties to resolve disputes such as this one in the United Kingdom, as was their intent when they negotiated the contract. *See Liverpool and London S.S. Prot. And Indem. Ass'n v. Islas Galapagos Turismo Y Vapores, C.A.*, 1997 WL 900841, at *1 (S.D. Fla. 1997) ("The scope and enforcement of a forum selection clause is a matter of contract interpretation and the intent of the parties should govern the extent to which the non-selected court may exercise its jurisdiction."). Sensify counters that: (1) enforcement of the forum-selection clause would violate public policy; (2) the forum-selection clause did not survive ITNA's termination of the Agreement; and (3) even if the clause did survive, it does not apply to Sensify's FUTSA claim.

First, mandatory forum-selection clauses, such as the one at issue here, are "presumptively valid and enforceable" absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (internal quotation marks and citation omitted). That said, "[a] forum-selection clause will be invalidated when," *inter alia*, "enforcement of the clause would contravene public policy." *Id.* Sensify argues enforcement of the clause in this case would undermine Florida's interest "in proscribing acceptable conduct relative to trade

secrets for companies that avail themselves of the privilege of conducting business within this State." (ECF No. 27 at 3). I am not convinced that the clause is so "obnoxious" to Florida public policy that I should not enforce it. *Cf. Holderness v. Hamilton Fire Ins. Co. of New York*, 54 F. Supp. 145, 147 (S.D. Fla. 1944) (courts need not enforce "a contract right [that is] is obnoxious to the public policy of a state"). As discussed further below, courts routinely apply forum-selection clauses to tort actions under circumstances similar to those present here.[1]

With respect to Sensify's second argument, courts consistently have rejected the notion that termination of an agreement necessarily extinguishes its forum-selection clause. *See TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 535 (E.D. Pa. 2010); *Versar, Inc. v. Ball*, 2001 WL 818354, at *2 (E.D. Pa. 2001); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238 (S.D. Tex. 1997); *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272, 275 (M.D. Tenn. 1996); *Young Women's Christian Ass'n of the U.S. v. HMC Entm't, Inc.*, 1992 WL 279361, at *4 (S.D.N.Y. 1992); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989); *see also* 13 Corbin on Contracts § 67.2, at 12 (rev. ed. 2003) ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses."). "*Unless otherwise expressed*, a choice of forum clause does not expire upon termination of the contract from which it derives. . . . [T]o read the contract so as to disregard the forum-selection clause for actions brought following termination would be to distort its usual, common sense meaning and applicability." *Versar*, 2001 WL 818354, at *2 (emphasis added).

Here, there is nothing in the Agreement that expressly neuters the forum-selection clause upon termination. Sensify contends, however, that because the Agreement contains a

---

[1] *See, e.g.*, *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) ("[L]itigating [a tort claim] in England is neither immoral nor illegal, and no law or policy of the United States demands that every dispute be litigated in the tribunal with the most experience – if that were so, jurisdiction based on diversity of citizenship would be abolished (for state courts have more experience with their own law than federal courts do), federal defenses to claims filed in state court would all be removed to federal court, and the courts of the United States would disclaim any power to adjudicate disputes under foreign law. Yet all of these things are common, even in cases of exceptional complexity.").

3

paragraph expressly providing for the survival of certain enumerated provisions after termination, the exclusion of the forum-selection clause from that "survival" clause *implies* that the forum-selection clause did not survive the Agreement's termination. *See, e.g.*, *Exprezit Convenience Stores, LLC v. Transaction Tracking Techs.*, 2005 WL 2704891 (N.D. Fla. 2005) (contract may indicate by implication that termination should result in invalidation of forum-selection clause). To be sure, the forum-selection clause is not among the provisions set out in the Agreement's "survival" clause. But courts repeatedly have upheld the applicability of forum-selection clauses even where the contract expressly provides for the survival of certain enumerated provisions but not the forum-selection clause.[2] *See TriState*, 752 F. Supp. 2d at 535; *Versar*, 2001 WL 818354, at *2; *Texas Source Group*, 967 F. Supp. at 238; *Allied Sound*, 934 F. Supp. at 275; *Advent*, 709 F. Supp. at 846.

In particular, I am persuaded by the court's analysis in *TriState* as to why the forum-selection clause in that case survived termination of the agreement:

> The fact that the agreement expressly provides for the survival of certain other contractual provisions, but not the forum-selection clause, does not alter the analysis. The exclusion of the forum-selection clause from the "survival" clause – which, as a general matter, is intended to ensure the survival of certain contractual provisions that might otherwise be extinguished upon termination of the agreement – simply does not evidence a clear intent that, upon termination of the agreement, the forum-selection clause would cease to apply to claims arising under the agreement.

*TriState*, 752 F. Supp. 2d at 36 (citation omitted).

Sensify contends *TriState* does not apply here because it was a breach-of-contract action rather than a tort action. That distinction is meaningless for the purposes of this

---

[2] Courts generally construe "survival" clauses as pertaining only to performance obligations – indeed, except for the "Definitions" section, those were the only matters addressed in the Agreement's "survival" clause – rather than to the settlement of disputes. *See, e.g., Silverpop Sys., Inc. v. Leading Market Techs., Inc.*, 2014 WL 11164763, at *8 (N.D. Ga. 2014) ("[C]onstruing the survival clause as limited to the performance obligations of the agreement properly gives meaning to the relevant provisions[, so that] structural provisions . . . remain unaffected by the termination of the agreement."), *aff'd, Silverpop Sys., Inc. v. Leading Market Techs., Inc.*, 641 F. App'x 849, 858 (11th Cir. 2016) (structural provisions "may" survive termination). The forum-selection clause here clearly is a structural provision addressed to the settlement of disputes and does not describe performance obligations of either party.

analysis. As the *TriState* court itself observed:

> Although the scope of a forum-selection clause depends on the specific language of the clause, courts have generally held that a forum-selection clause applies to tort and other non-contract claims that require interpretation of the contract or otherwise implicate the contract's terms. *See, e.g., Omron Healthcare, Inc. v. Maclaren Exports, Ltd.*, 28 F.3d 600, 601-03 (7th Cir. 1994) (holding that forum-selection clause governed trademark-infringement claim where resolution of dispute depended on interpretation of the contract); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (holding that forum-selection clause applied to RICO, fraud, unfair-competition, and tortious-interference claims because they implicated the terms of the agreement); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720-21 (2d Cir. 1982) (applying forum-selection clause to antitrust claim); *see also Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.").

*Id.*

Thus, depending on the scope of the forum-selection clause, the pleading of non-contractual theories of liability does not preclude enforcement of the clause. *See Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (tort claims subject to a forum selection clause because "resolution of the claims relates to interpretation of the contract"); *Rini Wine Co. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1059 (N.D. Ohio 1985) (applying clause to antitrust and unfair trade practice claims because the dispute arose from the contract). The question, then, is whether Sensify's FUTSA claim falls within the scope of the Agreement's forum-selection clause, which applies to "any dispute arising out of or relating to [the] Agreement." (ECF No. 11-1 ¶ 10.h). I conclude that it does.

There exists a definite link between the Agreement and Sensify's claim. The parties executed the Agreement on February 22, 2016. Sensify admits that "[o]n February 22, 2016, in furtherance of their business dealings, Sensify was required to disclose to ITNA a list of proprietary and protected Sensify customers and accounts." (ECF No. 1 ¶ 15). That list is attached to the Agreement as Exhibit C. (ECF No. 11-1 at 17). Sensify further admits that it and ITNA "agreed that the account list would remain absolutely protected." (*Id.* ¶ 28). Sensify's claims that ITNA misappropriated at least one customer name from the list in violation of FUTSA. Thus, resolution of Sensify's claim depends, at least in part, on an

evaluation of the parties' rights and obligations vis-à-vis the trade secret information disclosed under the Agreement. Sensify's claim therefore "relates to" the Agreement within the meaning of its forum-selection clause. *See, e.g.*, *Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099, at *2 (M.D. Fla. 2006) ("In this circuit, forum selection clauses are broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract and to promote enforcement of those clauses consistent with the parties' intent.") (citing *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987)).

In sum, the Agreement's forum-selection clause survived ITNA's termination of the Agreement, and Sensify's FUTSA claim falls within its scope. Accordingly, Sensify must litigate its claim against ITNA in the United Kingdom.[3]

## CONCLUSION

It is hereby **ORDERED and ADJUDGED** that ITNA's Amended Motion to Dismiss (ECF No. 11) is **GRANTED**. This case is **DISMISSED** *with prejudice* pursuant to Federal Rule of Civil Procedure 41(a)(2). Each party shall bear his or its own costs and attorney's fees.

The Clerk is directed to **CLOSE** this matter. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 28th day of April 2017.

*[signature: Marcia G. Cooke]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*

---

[3] ITNA also argues that I should dismiss the Complaint because Sensify failed to join indispensible parties. (ECF No. 11 at 3-8). Sensify counters that ITNA has failed to demonstrate that any of the parties it claims are indispensible have a cognizable interest in this litigation. (ECF No. 14 at 5-9). Because I find that the Agreement's forum-selection clause requires the parties to litigate their dispute in the United Kingdom, I need not address their arguments regarding joinder of indispensible parties.